**In the**
**UNITED STATES DISTRICT COURT**
**for the SOUTHERN DISTRICT OF INDIANA,**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| *vs*. | ) | **CAUSE NO. 1:09-cv-945-JMS-TAB** |
| | ) | |
| **$6,500.00 UNITED STATES CURRENCY**. | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY**
**Claimant=s Motion to Suppress Evidence (doc. 14)**

This Cause is before the Court on the motion of Timothy A. Harpel to supress evidence of all items seized by law enforcement officers from his residence on February 13, 2009. The seized items include 275 grams of marijuana, marijuana stems, seven digital scales, packaging material, two pistols, and boxes of ammunition. Complaint of Forfeiture In Rem (dkt. 1) (AComplaint@) & 20. Also seized was United States currency in the amount of six thousand, five hundred dollars which was found in a white plastic bag underneath frozen food inside a chest freezer in the kitchen, *id*. & 22, and which the Government seeks to forfeit in this action under 21 U.S.C. ' 881 as moneys involved in controlled-substances offenses.[1] In his Notice of Claim (dkt. 8), Mr. Harpel asserts ownership of the money and demands its return.

[1] The Government alleges that Athere is probable cause to believe that the defendant currency are Amoneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance,@ and Aproceeds traceable to such an exchange,@ and Amoneys . . . used or intended to be used to facilitate any violation of [the Controlled Substances Act, 21 U.S.C. '801 *et seq*.],@ and is therefore subject to forfeiture to the United States of America pursuant to Title 21, United States Code, Section 881(a)(6).@ Complaint & 30.

After a paternity trial in 1994, the Madison County (Indiana) Superior Court IV-D ordered Donald Everling to pay child support in the amount of $25 each week. Case Docket (dkt. 16-1), entry for Nov. 9, 1994. After falling behind, he was ordered to pay an additional $5 each week toward the past-due amount. As of January 31, 2009, Mr. Everling had amassed an arrearage of $8,120. Case Docket, entry for Feb. 3, 2009. He did not appear at a February 3, 2009 child-support review hearing and the court ordered that a body attachment for him issue because of his failure to appear, with an escrow requirement of $2,000 to withdraw and release the order.[2] *Id*. The next day, February 4, 2009 (docketed by the clerk on February 6, 2009), Mr. Everling faxed to the court a motion to reconsider and withdraw the body attachment and this motion was referred to the court=s commissioner. The body attachment was Aissued@ on February 9, 2009, but the paperwork was not completed at this time. *Id*., entry for February 9, 2009; Affidavit of Violet Raymore (dkt. 17-1). On February 10, 2009, the commissioner granted Mr. Everling=s motion and signed an order vacating the February 3, 2009 order for a body attachment and withdrawing the body attachment. Order to Withdraw Body Attachment (dkt. 14-1). This order was not docketed until February 13, 2009. The Commissioner=s order does not mention the grounds for withdrawal or satisfaction of the $2,000 escrow amount. On February 11, 2009, presumably unaware of the Commissioner=s order, the Superior Court clerk=s office prepared the paperwork for the body attachment. Raymore Aff. It was on a preprinted form and read as follows:

[2] Pursuant to statute, Awrits of attachment of the body@ must Afix an amount of . . . escrow if the order that the person has allegedly violated concerns a child support obligation@ and the Sheriff may release an arrestee Aafter any person has deposited the amount of escrow . . . .@ Ind. Code Ann. 34-47-4-2(b)(2) and (d)(2) (LexisNexis 2008).

BENCH WARRANT B IV B D

**48D02-9112-JP-00482**

**STATE OF INDIANA, MADISON COUNTY, ' ' :**

To the Sheriff of Madison County of [*sic*] any law enforcement officer, Greeting:

You are hereby commanded to arrest **DONALD A. EVERLING M/C** if he/she may be found in your county, so that you may have him/her before the Judge of the Madison Superior Court IV-D instanter, then and there to answer the State of Indiana on a charge of

**CONTEMPT OF COURT**

and abide the order of the Court thereon and return this writ.

WITNESS, the Clerk and Seal of said Court this 11 day of FEBRUARY A.D. 2008 [*sic*].[3]

11

[*signature*]

Clerk

Bench Warrant (dkt. 15-1). The reverse side of the warrant, forming its outside cover when folded, is labeled ATERM WARRANT.@ It records Mr. Everling=s residence address in the city of Elwood C a residence that he shared with the claimant Mr. Harpel C and includes the note, ABail $2,000.00 SUPPORT ARREARS,@ which presumably records the escrow amount. This side is stamped as received at the Madison County Sheriff=s department on February 11, 2009. *Id*.

Three relevant entries were made on the Case Docket on February 13, 2009. First, it is recorded that, upon receipt of $2,000, the body attachment was withdrawn on that day.[4] Next

---

[3] Inadvertently, the form=s preprinted year of 2008 was not corrected when the paperwork was completed. Raymore Aff.

[4] AB/A withdrawn on 2-13-09. Upon receipt of $2,000, previously issued BA is hereby withdrawn.@

appears the belated entry that, on February 10, 2009, the commissioner granted Mr. Everling=s motion to withdraw the body attachment.[5] Finally, filing of receipt of $2,000 was recorded. These entries could support an inference that the Superior Court withdrew its body attachment on February 13, 2009 upon receipt that day of the escrow amount of $2,000, and that it was not then aware that the court=s commissioner had already granted Mr. Everling=s referred motion for withdrawal three days earlier.

As noted, the Madison County Sheriff=s department received the bench warrant[6] on February 11, 2009.[7] At some point, the warrant was Aput into the Madison County warrant section,@ where it came to the attention of the Elwood Police Department. Around 1:30 a.m. on February 13, 2009, four officers of the Elwood Police Department, including its Chief of Police, went to Mr. Everling=s residence to serve the bench warrant. When they arrived at the residence, there were several cars in the driveway, including one that was recognized as having been driven recently by Mr. Everling. Two officers watched the front of the house while the other two officers, including the Chief, proceeded to the back or side door, which is described as the Acommon entrance@ for the residence. The officers at the back or side door knocked and announced themselves but without response. They noticed that there were lights and a television

---

[5] A2/10/09: Comes now the IV-D Court and grants respondent=s motion to withdraw BA.@

[6] It appears that the terms Abody attachment,@ Abench warrant,@ and Aterm warrant@ were used interchangeably by the Superior Court, the clerk=s office, and the Sheriff=s department to refer to the one order and document directing law enforcement officers to seize Mr. Everling and deliver him to the court. For ease of reference, Abench warrant@ or Awarrant@ will be used hereinafter.

[7] The following narrative is taken from the separate reports of the four officers involved in serving the bench and search warrants, (dkts. 17-2, 17-3, 17-4, and 17-5), and the transcript of the probable cause hearing for the search warrant, (dkt. 14-2).

on in a back room and that a dog that had begun to bark when they arrived sounded as if it was being mufflled, as if someone inside the house was quieting it. The Chief of Police contacted Mr. Everling on his cellphone and advised him why they were at the house and requested him to come to the door. The Chief felt that Mr. Everling was being hesitant and evasive; the Chief believed that Mr. Everling was likely in the house. Mr. Everling told the Chief that he was not at the house and that a friend, Tim Harpel, was watching his dog and that it might be he inside the house. The Chief then contacted Mr. Harpel who was at a nearby residence and had already talked to Mr. Everling. Mr. Harpel soon arrived at the residence and told the officers that Mr. Everling asked him to tell the officers that he was out of the state. Although Mr. Harpel acknowledged having a key to Mr. Everling=s house, he repeatedly refused to allow the officers entrance. The Chief felt that Mr. Harpel was very nervous when he asked if Mr. Everling was inside their shared residence. Mr. Harpel told the Chief that he had not been staying at his residence for about a week.

The Chief of Police then contacted a Madison County deputy prosecutor who advised that, if the officers had reason to believe that Mr. Everling was in the house and that the address on the warrant was the same as the residence=s, then the bench warrant allowed them to enter the house. After again being refused use of Mr. Harpel=s key, the officers forced the front door and entered the residence to search for Mr. Everling. During their search, the officers saw in plain view several weapons[8] and evidence of controlled-substances offenses. After clearing the house and not finding Mr. Everling, the officers left the house. The Chief contacted the deputy prosecutor again who advised that they obtain a search warrant based on their observations. Two of the officers

[8] Mr. Everling apparently has a record of two felony convictions: robbery class B and battery class C.

remained at the house to secure it while the Chief and the fourth officer left to obtain a warrant.

At about 2:50 a.m. that morning, the Chief of Police and the officer testified before an Elwood City Court judge about their observations at Mr. Everling=s residence. The judge issued the requested warrant. *Id*.; Search Warrant (dkt. 14-3). The officers served the search warrant at about 3:10 a.m. and seized several possible drug-offense-related items. The officers finally left the residence at about 7:00 a.m. and allowed Mr. Harpel to secure the house. Presumably, the case docket entries recording the withdrawal of the bench warrant were made later that day during the regular business hours of the Superior Court clerk=s office.

Mr. Harpel moves to suppress all evidence that was seized pursuant to the search warrant issued by the Elwood City Judge. (Claimant=s Motion to Suppress Evidence (dkt. 14) at 9 (AAll evidence seized pursuant to the warrant should be suppressed@); proposed Order Granting Motion to Suppress (dkt. 14-6) (AThe court finds . . . the motion to suppress should be granted with regard to all items seized@). The apparent intended effect of suppression is to prevent the Government from proving a relationship between the seized money and controlled-substances offenses and, thus, prevent its forfeiture.

The exclusionary rule for constitutional violations applies in civil forfeiture actions. *United States v. $5,608.30 in U.S. Coin and Currency*, 326 F.2d 359, 362 (7th Cir.1964). *See*, *United States v. $32,400.00 in U.S. Currency*, 82 F.3d 135, 139 n. 3 (7th Cir. 1996); *United States v. $84,000 U.S. Currency*, 717 F.2d 1090, 1094 (7th Cir. 1983), *cert. denied*, 469 U.S. 836, 105 S.Ct. 131, 83 L.Ed.2d 71 (1984). The burden is on the movant for suppression to demonstrate by a preponderance of the evidence that a constitutional violation has occurred that warrants

application of the exclusionary rule. *Nix v. Williams*, 467 U.S. 431, 444 n. 5, 104 S.Ct. 2501, 2509 n. 5, 81 L.Ed.2d 377 (1984); *United States v. Pitts*, 322 F.3d 449, 460 (7th Cir. 2003), *cert. denied*, 540 U.S. 849, 124 S.Ct. 128, 157 L.Ed.2d 90 (2003). While the movant bears the burden of establishing a *prima facie* case of constitutional violation, the Government bears the burden of proving, by a preponderance of the evidence, the applicability of various exceptions and defenses, such as waiver of *Miranda* rights, inevitable discovery, and the voluntariness of confessions. *United States v. Evans*, 27 F.3d 1219, 1228 (7th Cir. 1994); *United States v. Gillespie*, 974 F.2d 796, 800 (7th Cir. 1992).

**Illegal entry**

Mr. Harpel=s main argument for suppression is that, because the bench warrant did not permit the officers to make the initial forced entry into Mr. Everling=s residence, all items that were seized as a result of the search warrant are Afruits of the poisonous tree@ of the initial illegal entry and should be excluded.

Mr. Harpel=s primary ground for the illegality of the initial search of his residence is that Indiana law forbids forced entry into a person=s residence in order to serve a civil body attachment, and the parties expend much of their briefs on interpreting the relevant Indiana precedent, *Robinson v. State*, 538 N.E.2d 932 (Ind. 1989), and *Casselman v. State*, 472 N.E.2d 1310 (Ind. Ct. App. 1985). But the exclusionary rule that the Court applies in this case enforces federal, not state, constitutional standards. *United States v. Martin*, 399 F.3d 879, 881 (7th Cir.), *cert. denied*, 546 U.S. 881, 126 S.Ct. 178, 163 L.Ed.2d 183 (2005); *United States v. Wilson*, 169 F.3d 418, 424 n. 5 (7th Cir.), *cert. denied*, 527 U.S. 1029, 119 S.Ct. 2383, 144 L.Ed.2d 785, and 528 U.S. 963, 120 S.Ct. 396, 145 L.Ed.2d 309 (1999). The Court of Appeals for the Seventh Circuit explained

this principle in a highly relevant case involving alleged violations of Indiana law:

> [Defendant Delaporte] contends that some of the evidence used against him had been obtained by Indiana law enforcement officers in violation of an Indiana law governing telephone warrants and had been turned over to federal prosecutors. He points out that a federal officer who obtains evidence in violation of federal law can be enjoined from using the evidence in a state criminal prosecution, *Rea v. United States*, 350 U.S. 214, 76 S.Ct. 292, 100 L.Ed. 233 (1956), and he argues that evidence obtained in violation of state law should likewise be barred from use in a federal prosecution. *Rea* has little or no contemporary significance, now that the exclusionary rule of the Fourth Amendment applies to state as well as federal prosecutions. But it has not been overruled.
>
> Appealingly symmetrical as Delaporte=s argument is, it has been repeatedly, and we think rightly, rejected. The federal government has an interest in preventing its officers from violating federal law, but it has no interest in preventing state officers from violating state law. If the warrant in this case had failed to comply with the requirements of federal law, Delaporte would have had a federal defense to the use of the evidence seized under the warrant in any court, state or federal. But that is not argued. The only violation (if there was one) was of state law. State officers do not by violating state law violate the federal Constitution. So there is no constitutional basis for the defense asserted in this case, nor any other basis that we can think of. At argument the defendant=s lawyer suggested that the basis was comity; that the federal government should not invite violations of state law by providing a forum in which the violators can use the fruits of their violations. Given the considerable overlap between state and federal drug laws, the argument has a certain bite. State law enforcement officers who violate state law without at the same time violating federal law will often be able to turn over the fruits of their violations to federal law enforcement officers who will as it were do the state officer=s prosecuting, only in federal court.
>
> Comity between the federal government and the states has been a ground on which, for example, federal courts have declined to interfere with state criminal prosecutions. . . . If recognizing in the name of comity a federal defense to the use of evidence obtained in violation of state law were an indispensable method of assuring compliance with state law, it would deserve serious consideration . . . . No such imperative has been shown. So far as appears, if Indiana wants to prevent even the rather technical violations of its telephone warrant statute that occurred here, it can punish its law enforcement officers who turn over evidence seized under unlawful warrants to the federal government. If it does not want to do this, that is no concern of ours. The refusal of the executive branch of state government to enforce a law enacted by the legislative branch is, in general, no business of a federal court. It is an aspect of the separation of powers within the states, a matter of state prerogative. If the states implored us to recognize the defense proposed by the defendant in order to prevent the flouting of state law by state law enforcement

> officers, we might have a different case, though *United States v. Payner*, 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980), with its narrow construal of the federal courts= supervisory power over law enforcement, suggests not.
>
> The *Sutherland* case [*United States v. Sutherland*, 929 F.2d 765 (1st Cir.), *cert. denied*, 502 U.S. 822, 112 S.Ct. 83, 116 L.Ed.2d 56 (1991)], which we cited earlier, noted, while rejecting, earlier decisions which suggest that Ain an extreme case of flagrant abuse of the law by state officials,@ evidence obtained by that abuse might be excludable in federal court. 929 F.2d at 770. We agree that an exception for cases of Aflagrant abuse@ is inappropriate . . . . The flagrant abuse, like the ordinary abuse, of state law is for the states to correct. We merely add that should a state ever ask us in the name of comity to exclude evidence obtained by state officers in violation of state law, we might revisit the issue; pending such a request, we agree with *Sutherland*.

*United States v. Delaporte*, 42 F.3d 1118, 1119-20 (7th Cir. 1994) (citations omitted). Moreover, this Court will look primarily to federal, not state, precedents for interpreting federal constitutional standards.

Mr. Harpel fails to identify or argue any federal constitutional violations committed by the Elwood police officers when they forcibly entered his residence. When presented with the Government=s citations to two decisions of this Court holding that, under federal law, Indiana civil bench warrants[9] are valid arrest warrants allowing forced entry into the targets= residences, Mr. Harpel again refused to address federal constitutional law. Instead, he attempted to distinguish those cases by emphasizing that his claims were not based on the federal constitution but solely upon Indiana law. Mr. Harpel has, therefore, failed to carry his burden of showing a federal constitutional violation justifying exclusion of the evidence seized from his residence.

---

[9] *Hankins v. Dice*, No. 1:03-cv-1694-DFH-WTL, Entry Discussing Motion for Summary Judgment, 2005 WL 2100068 (S. D. Ind., Aug. 30, 2005), involved a body attachment, and *Montgomery v. Morgan County*, No. 1:06-cv-915-RLY-TAB, Entry on Defendants= Motion for Summary Judgment, 2008 WL 596068 (S. D. Ind., Feb. 29, 2008), involved an Order for Apprehension and Return of an individual with a mental illness who had either escaped from commitment or failed to comply with conditions of outpatient treatment.

Alternatively, federal precedent in addition to the two decisions of this Court cited in the note holds that a civil bench warrant allows forced entry into the target's residence in order to effect the arrest if there is reason to believe that the target is inside. *Steagold v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981); *United States v. Gooch*, 506 F.3d 1156, 1159 (9th Cir. 2007), *cert. denied*, 552 U.S. 1331, 128 S.Ct. 1922, 170 L.Ed.2d 782 (2008); *United States v. Spencer*, 684 F.2d 220 (2nd Cir. 1982), *cert. denied*, 459 U.S. 1109, 103 S.Ct. 738, 74 L.Ed.2d 960 (1983); *Hutt v. Pierce County*, No. C-09-5271-BHS, 2009 WL 4066839 (W.D. Wash., Nov. 20, 2009); *United States v. Mullikin*, 534 F.Supp.2d 734 (E.D. Ky. 2006), *aff'd*, 267 Fed. Appx. 456 (6th Cir. 2008); *Cogswell v. County of Suffolk Deputy Sheriff's Dept.*, 375 F.Supp.2d 182 (E.D. N.Y. 2005); *United States v. Meindl*, 83 F.Supp.2d 1207 (D. Kan. 1999). *See*, *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

Mr. Harpel also argues that the officers' forced entry into his residence was illegal because the bench warrant had been withdrawn before they entered. Although the Superior Court Commissioner had granted Mr. Everling's motion for withdrawal on February 10, 2009, the withdrawal was not docketed until after Mr. Everling's arrest. Mr. Harpel points to no evidence showing that the officers were aware, at the time of the entry, of the Commissioner's withdrawal or of any other fact suggesting that the warrant was invalid. The only evidence presented on this motion shows that the Elwood Police officers became aware of the warrant on February 13, 2009, shortly after it was entered by the Sheriff into the warrant database and shortly before the officers served it. (Dkt. 17-2). The Superior Court's docket entries recording both the Commissioner's withdrawal and the Superior Court's withdrawal of the warrant (apparently independently, and in ignorance of, the Commissioner's order) were not made until later on February 13th, after the

officers entered Mr. Everling=s and Mr. Harpel=s residence. Mr. Harpel does not point to any evidence showing that, had the officers sought to confirm that the warrant was still active in the early hours of February 13th, they would have discovered that it had been withdrawn.

Mr. Harpel has not established that the Elwood Police officers= entry into his residence on February 13, 2009 was illegal under the United States Constitution.

**Defective search warrant**

Mr. Harpel argues that the search warrant that the Elwood City Court judge issued, and by which evidence was seized from Mr. Harpel=s house, was defective because the judge was recklessly misled by the Elwood Police Chief in his probable-cause showing. Mr. Harpel specifies two misrepresentations. First, the Elwood Police Chief told the judge that the Awarrant . . . was just issued early this morning@, (dkt. 14-2), when, in fact, it had been issued ten days earlier. Had the judge been told that the bench warrant was ten days old, Mr. Harpel argues, the judge might have questioned whether the warrant was still active and deferred signing the search warrant until its continued validity was verified with the Superior Court clerk. Second, the Chief stated that the initial bench warrant Awas for a child support warrant $2000 arrears bond,@ when it was actually a civil writ of attachment. Mr. Harpel argues that this misled the judge because, in certain circumstances, a failure to pay child support can be charged as a class D felony and result in a criminal, rather than a civil, arrest warrant; thus, the judge likely assumed that the officers entered Mr. Harpel=s residence on a criminal arrest warrant. Had the judge been told that the bench warrant was a civil warrant, he would have known that the initial entry was illegal and would not have issued the requested search warrant, being fruit of the poisonous tree.

Mr. Harpel submits no evidence that the Elwood police officers who made the probable-cause showing for the search warrant were aware that the bench warrant was ten days old. Without that fact being shown, the officers could not have Amisled@ the judge, recklessly or otherwise. The Police Chief=s statement that the warrant had been issued that morning may well have been a reference to when the Elwood Police Department received notice of the warrant after it was added to the database by the Madison County Sheriff=s department. In addition, Mr. Harpel did not show that, had the officers been required to wait until the Superior Court clerk=s office opened in the morning to verify the warrant=s validity, they would have discovered that it had been withdrawn. No evidence was presented indicating when, on February 13, 2009, the clerk=s office received and/or docketed the Commissioner=s withdrawal order or when the Superior Court itself ordered the warrant=s recall and, therefore, whether a verification check by the Elwood police officers would have resulted in notice of the withdrawal. No evidence indicates that the officers had anything other than a good-faith belief in the validity of the Superior Court=s bench warrant. Further, the materiality of the date cannot simply be assumed in the circumstances. It cannot be assumed that, had the City Court judge known that the bench warrant had been ordered by the Superior Court judge on February 3rd, or that it had been Aissued@ on February 9th, or that the paperwork for it was not completed and passed on to the Sheriff until February 11th, the judge would have refused to sign the requested search warrant.

By Mr. Harpel=s own argument, whether the Elwood City Court judge was misled about the criminal as opposed to civil nature of the Superior Court=s bench warrant is significant only in the context of Indiana law that, according to Mr. Harpel, forbids forced entry into residences in order to execute civil arrest warrants. Because federal law does not accord significance to the civil

*versus* criminal nature of the bench warrant, the validity of the subsequent search warrant is not impeached on this basis.

Mr. Harpel has not shown that the search warrant was defective according to the United States Constitution.

**Defective turn-over order**

Mr. Harpel argues that the state-court order allowing law enforcement officers to turn over the seized evidence to federal prosecutors was defective. Mr. Harpel argues that because only property that was lawfully seized may be turned over, Ind. Code Ann. 34-24-1-2(a), and the initial forced entry into Mr. Harpel=s residence pursuant to a civil warrant was illegal according to Indiana law, the state court should not have ordered the seized evidence turned over. This Court will not review the decision of the state court on this matter. The state court=s turn-over decision is deemed valid until it is reversed by the same or a higher state court. *See, Membres v. State*, 889 N.E.2d 265, 268-69 (Ind. 2008). In addition, because no record of the state court proceeding was submitted, it is not known whether Mr. Harpel=s arguments about the illegality of the initial entry into his residence were presented to it or whether he even requested a stay of the order to pursue an appeal.

**Conclusion**

Because Mr. Harpel has failed to establish that the evidence seized from his residence was taken in violation of his rights under the United States Constitution, he has shown no grounds to exclude it from this case. His motion to suppress is **DENIED**.

**SO ORDERED.**

Date: 07/30/2010

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

Stephen G. Gray
ATTORNEY AT LAW
misstuffy@aol.com

Winfield D. Ong
UNITED STATES ATTORNEY'S OFFICE
winfield.ong@usdoj.gov